1    Erik R. Puknys
     (CAB #190926; erik.puknys@finnegan.com)
2    FINNEGAN, HENDERSON, FARABOW,
       GARRETT & DUNNER, L.L.P.
3    3300 Hillview Ave
     Palo Alto, CA 94304
4    Telephone: (650) 849-6600
     Facsimile: (650) 849-6666
5

6    Attorneys for Defendant
     SYNGENTA CROP PROTECTION, INC.

7

8                 UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                    (SAN JOSE DIVISION)

| | |
|---|---|
| 11   VALENT U.S.A. CORPORATION AND SUMITOMO CHEMICAL CO., LTD., | CASE NO. 08-cv-0720 RS |
| 12 | **SYNGENTA'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
|           Plaintiffs, | |
| 13 | Hearing Date:  April 18, 2008 |
|        v. | Hearing Time: 9:00 am |
| 14 | |
|   SYNGENTA CROP PROTECTION, INC., | |
| 15 | |
|          Defendant. | |
| 16 | |

1

**NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:  PLEASE TAKE NOTICE

3

that, on April 18, 2008, at 9:00 AM or as soon thereafter as counsel may be heard,[1] Defendant

4

Syngenta Crop Protection, Inc. ("Syngenta") will and hereby does move that the Court, pursuant to

5

Fed. R. Civ. P. 12(b)(1) and 12(b)(6), dismiss the complaint filed by plaintiffs Valent U.S.A.

6

Corporation ("Valent") and Sumitomo Chemical Co. Ltd. ("Sumitomo") (collectively "Plaintiffs")

7

for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be

8

granted.  In the alternative, Syngenta respectfully requests that this Court dismiss this action under

9

its discretionary authority to decline adjudication of declaratory judgment ("DJ") actions.

10

This motion is based on this Notice of Motion and Memorandum of Points and Authorities,

11

and the Supporting Declaration of Erik R. Puknys.

12

**CONCISE STATEMENT OF RELIEF REQUESTED**

13

Syngenta respectfully requests that the Court issue an order pursuant to Fed. R. Civ. P.

14

12(b)(1) and 12(b)(6) dismissing Plaintiffs' complaint for lack of subject matter jurisdiction and for

15

failure to state a claim upon which relief may be granted.  In the alternative, Syngenta respectfully

16

requests that this Court issue an order dismissing this action under its discretionary authority to

17

decline adjudication of DJ actions.

18

**MEMORANDUM OF POINTS AND AUTHORITIES**

19

**I.     INTRODUCTION**

20

Plaintiffs brought this DJ action against Syngenta regarding Syngenta's U.S. Patent No.

21

7,105,469 ("the '469 patent"), which relates to a method of controlling pests in transgenic crops by

22

applying a composition containing an insecticide known as "clothianidin."  Plaintiffs allege that they

23

plan to sell clothianidin in the U.S. for use on transgenic crops in 2009, but that efforts to negotiate a

24

license from Syngenta under the '469 patent to date have not succeeded.  As explained below,

25

_____

26

[1] At the same time this motion is being filed, Syngenta is also filing its request for

27

reassignment of this case to a district judge.  See Civ. L. R. 73-1(a).  Accordingly, Syngenta has noticed this motion for hearing 35 days after filing, the default period of time provided by the Local Rules.  See Civ. L. R. 7-2(a).  Syngenta anticipates, however, that a new hearing date will be

28

assigned upon reassignment of this case to a district judge.

1    Plaintiffs' complaint presents a purely speculative alleged controversy that fails to meet the

2    immediacy and reality requirements necessary for DJ jurisdiction under *MedImmune, Inc. v.*

3    *Genentech, Inc.*, 127 S. Ct. 764, 771 (2007).

4        The discussions between Sumitomo and Syngenta referenced in the complaint do not show a

5    definite and concrete dispute over patent infringement but rather amicable business discussions in

6    which Syngenta has already indicated that ***it is agreeable in principle to granting Sumitomo a***

7    ***license*** under the '469 patent.  Syngenta, however, does not have sole authority to grant a license

8    because it previously granted a co-exclusive license under the '469 patent to Bayer CropScience AG

9    ("Bayer").  As the co-exclusive licensee, Bayer would have to consent to any additional license

10   under the '469 patent.  In this regard, Sumitomo asked Syngenta to contact Bayer to seek its consent

11   to a license for Sumitomo under the '469 patent, and Syngenta has in fact contacted Bayer as

12   requested to inquire about the possibility of a license for Sumitomo.  Moreover, although Bayer has

13   not yet consented to a license, Sumitomo itself has stated that it is "confident" that consent from

14   Bayer "will be forthcoming."  Bayer and Sumitomo ***jointly developed*** clothianidin and have other

15   close business ties, so there is every reason to expect that Bayer and Sumitomo will be able to agree

16   on terms that would permit Sumitomo to negotiate a license from Syngenta under the '469 patent.

17       Further, there is no evidence that Syngenta intends to initiate a lawsuit against Plaintiffs on

18   the '469 patent.  Instead of an actual controversy between the parties, therefore, the circumstances of

19   the above-noted license discussions reveal, at most, an attempt by Sumitomo to unilaterally ***provoke***

20   a controversy to create subject matter jurisdiction for this case.  It was ***Sumitomo*** that first

21   approached Syngenta and raised the issue of the '469 patent, and thereafter pressed for a license

22   under the patent.  Notably, Plaintiffs do not allege that Syngenta ever approached Sumitomo or

23   Valent concerning any alleged infringement of the '469 patent, or even that Syngenta was aware of

24   any potential infringement of the '469 patent, including the small-scale testing of clothianidin on

25   transgenic crops referenced in Plaintiffs' complaint.

26       In reality, Plaintiffs are seeking an impermissible advisory opinion from this Court regarding

27   a speculative alleged "controversy" created solely by Sumitomo.  Sumitomo, however, should not be

28   permitted to improperly use the Declaratory Judgment Act as leverage to improve its bargaining

1   position vis-à-vis Syngenta and Bayer.  Accordingly, for the reasons further explained below, this

2   Court should dismiss Plaintiffs' DJ complaint for lack of subject matter jurisdiction and/or for failure

3   to state a claim upon which relief may be granted.  Alternatively, the Court should exercise its

4   discretion under the Declaratory Judgment Act and decline to hear this action.

5   **II.    STATEMENT OF FACTS**

6           During the fall of 2006, Sumitomo approached Syngenta regarding the insecticide

7   clothianidin and the possibility of obtaining a license under the '469 patent.[2]  Sumitomo indicated

8   that it had undertaken a review of various patents relating to clothianidin, and in the course of that

9   review, the '469 patent came to its attention.  [Declaration of Erik R. Puknys ("Puknys Decl."), Ex.

10  1.]  Plaintiffs do not allege that Syngenta ever raised any issue with Sumitomo about the '469 patent

11  prior to Sumitomo's initiation of discussions about the patent.

12          In response to Sumitomo's inquiry, Syngenta explained that it had already granted Bayer a

13  co-exclusive license under the '469 patent.  Under the terms of that agreement, further licenses under

14  the patent cannot be granted unless Bayer agrees to amend the co-exclusive arrangement to permit

15  other licensees.  In April 2007, Sumitomo asked Syngenta to contact Bayer about amending the

16  agreement to open the door to license negotiations between Sumitomo and Syngenta.  [*See* Puknys

17  Decl., Ex. 2.]  Syngenta agreed to do so and in fact promptly contacted Bayer as requested to inquire

18  whether Bayer was amenable to amending the co-exclusive agreement.  [*See* Puknys Decl., Ex. 3.]

19          While Bayer has not yet consented to a license in response to Syngenta's inquiry, Syngenta

20  cannot know if or when Bayer may do so.  Bayer, however, has publicly acknowledged that Bayer

21  and Sumitomo "jointly developed" clothianidin.  [Puknys Decl., Ex. 4; Puknys Decl., Ex. 5.]

22  Because of that close business relationship relating to clothianidin, Sumitomo has stated that it is

23  "confident that based on [its] relationship with Bayer with respect to Clothianidin that such

24  ─────────────────

25          [2]    None of the communications at issue occurred with defendant Syngenta Crop
    Protection.  In fact, all communications described in the complaint as allegedly involving defendant
26  Syngenta Crop Protection actually involved non-patent owner companies affiliated with defendant
    Syngenta Crop Protection.  Thus, the impression created by the complaint that defendant Syngenta
27  Crop Protection has engaged in discussions with Sumitomo is completely inaccurate.  (*See*
    Complaint at ¶¶ 25-27.)  Nonetheless, for purposes of this motion only, Syngenta will describe
28  communications that actually occurred with the Syngenta affiliates as occurring with defendant
    Syngenta Crop Protection.

Syngenta's Motion to Dismiss Plaintiff' Complaint
Case No. 08-cv-0720-RS

1   confirmation [of consent] will be forthcoming." [Puknys Decl., Ex. 6.]  The complaint

2   acknowledges that Sumitomo and Bayer already have an agreement in place relating to clothianidin.

3   [Complaint, ¶ 23.]  In addition, Sumitomo and Bayer are involved in at least one other major joint

4   development project, which confirms the close ongoing business relationship between the two

5   companies.  [Puknys Decl., Ex. 7.]  Although the complaint states that Sumitomo's effort to

6   negotiate with Bayer and Syngenta have been fruitless (Complaint, ¶ 25), the complaint presents no

7   evidence of any actual effort on Sumitomo's part to secure consent from Bayer, its business partner.

8   Thus, assuming Sumitomo actually attempts to negotiate with its partner, there is no reason to

9   assume at this time that Bayer will refuse to consent to a license for Sumitomo prior to the time

10  Sumitomo claims it intends to go on the market in 2009.

11          In May 2007, Sumitomo acknowledged that Syngenta had made clear that it was prepared to

12  negotiate with Sumitomo regarding a patent license, but that Bayer's consent was required:

13              ***Syngenta confirmed that it is willing to grant a license to Sumitomo under
                the '469 Patent*** on mutually acceptable terms and conditions.  Sumitomo

14              likewise confirmed its desire to avoid lengthy and costly legal proceedings by
                discussing such terms and conditions with Syngenta for an amicable

15              settlement.  Syngenta explained that following receipt of Sumitomo's April
                23rd letter, it conveyed its position to Bayer CropScience but had not yet

16              received a positive response.  ***Both parties agreed there is a need for
                Syngenta to obtain Bayer's consent*** before Syngenta granting the license to

17              Sumitomo.

18  [Puknys Decl., Ex. 8 (emphasis added).]

19          In July 2007, Sumitomo acknowledged Syngenta's "willingness . . . to cooperate" with

20  Sumitomo regarding a possible license under the '469 patent.  [Puknys Decl., Ex. 9 (stating "I

21  appreciate the willingness you have shown to us to cooperate with us . . . .").]  The parties then met

22  in October 2007 and January 2008 to continue their discussions regarding clothianidin and other

23  business opportunities.  However, despite Syngenta's efforts to avoid litigation, Plaintiffs brought

24  this DJ action against Syngenta on January 31, 2008.

25          The complaint alleges that Plaintiffs "plan to sell" clothianidin in the United States for use on

26  transgenic crops sometime in 2009 upon obtaining federal regulatory approval.  [Complaint at ¶¶ 13,

27  32-33.]  The complaint further alleges that, in seeking to obtain regulatory approval, Valent has

28  tested small amounts of clothianidin for controlling insects on transgenic plants and plans to conduct

Syngenta's Motion to Dismiss Plaintiff' Complaint
Case No. 08-cv-0720-RS

1  additional testing during the 2008 growing season. [*Id.* at ¶¶ 29-32.] Plaintiffs do not allege that

2  Syngenta had knowledge of any potential infringement of the patent prior to the DJ action or that

3  they informed anyone at Syngenta about their alleged small-scale testing of clothianidin on

4  transgenic crops. Although the complaint alleges that Valent conducted these tests, it does not allege

5  that Syngenta ever accused Valent of patent infringement or that Valent participated in the license

6  discussions with Syngenta. As explained below, the facts described above neither present an actual

7  controversy under the Declaratory Judgment Act, nor warrant judicial intervention at this time.

8  **III.    ARGUMENT**

9  **A.    Legal Standards Governing Motions to Dismiss**

10      A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when

11  the district court lacks the statutory or constitutional power to adjudicate it. *See Hamerter v. Ft.*

12  *Miley VA*, 2006 WL 3462793, at *1 (N.D. Cal. Nov. 30, 2006). When subject matter jurisdiction is

13  challenged under Rule 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to

14  survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir.

15  2001). Further, in challenging subject matter jurisdiction under the rule, the moving party may

16  submit affidavits or any other evidence to challenge the existence of an actual controversy. *See*

17  *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 882, 884 (Fed. Cir. 1985).

18      Dismissal is appropriate under Rule 12(b)(6) when a plaintiff's allegations fail to state a

19  claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to

20  dismiss for failure to state a claim is to test the legal sufficiency of the allegations in the complaint.

21  *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). To survive a 12(b)(6)

22  motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the

23  speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

24  **B.    Plaintiffs' Complaint Does Not Present an Actual Controversy Under the**
       **Declaratory Judgment Act**

25

26      Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a district court may declare the

27  rights and other legal relations of interested parties seeking such a declaration when there exists an

28  "actual controversy"—a provision that parallels Article III of the Constitution. As explained by the

1   Supreme Court, the presence of an "actual controversy" under the Declaratory Judgment Act

2   depends on "whether the facts alleged, under all the circumstances, show that there is a substantial

3   controversy, between parties having adverse legal interests, of *sufficient immediacy and reality* to

4   warrant the issuance of a declaratory judgment." *MedImmune*, 127 S. Ct. at 771 (emphasis added).

5   The Federal Circuit has explained that under the *MedImmune* standard the plaintiff must also

6   establish "an *actual or imminent injury caused by the defendant*." *Teva Pharms. USA, Inc. v.*

7   *Novartis Pharms. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) (emphasis added). Further, the DJ

8   plaintiff maintains the burden "to establish that such jurisdiction existed at the time the claim for

9   declaratory relief was filed and that it has continued since." *Benitec Australia, LTD. v. Nucleonics,*

10  *Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

11          **1.      The Prospect of a Lawsuit by Syngenta Is Speculative**

12          Plaintiffs fail to establish any actual or imminent injury caused by Syngenta of sufficient

13  immediacy and reality to warrant the issuance of a declaratory judgment given that the prospect of a

14  future patent infringement suit by Syngenta is entirely speculative. As explained above, Syngenta

15  never approached Sumitomo or Valent regarding the '469 patent. (*See* § II *supra*.) Instead,

16  *Sumitomo approached Syngenta* and requested a license under the patent. (*Id.*) Syngenta

17  responded by *agreeing in principle to a license* for Sumitomo subject to consent from Syngenta's

18  co-exclusive licensee, Bayer. (*Id.*) Further, at Sumitomo's request, Syngenta contacted Bayer to

19  seek Bayer's consent to a license for Sumitomo. (*Id.*) Sumitomo noted Syngenta's "willingness

20  . . . to cooperate" with Sumitomo and stated that it was "confident" that consent from Bayer "will be

21  forthcoming" in view of its close business relationship with Bayer stemming from their joint

22  development of clothianidin. (*Id.*) Syngenta's actions show good faith and are totally unlike the

23  types of threats of patent infringement that can give rise to DJ jurisdiction.

24          Plaintiffs, on the other hand, are attempting to unilaterally create a controversy where none

25  exists. Syngenta never, in fact, charged Plaintiffs with infringing the '469 patent. *See BridgeLux,*

26  *Inc. v. Cree, Inc.*, 2007 WL 2022024, at *9 (N.D. Cal. July 9, 2007) (finding no DJ jurisdiction

27  where there was "no indication that anyone from Cree ever specifically identified BridgeLux as

28  having infringed the '175 or '703 patents."). Specific details of what Plaintiffs were planning to do

1   are a bare minimum needed to form an opinion and charge infringement.  Tellingly, Plaintiffs make

2   *no* allegation that Syngenta was aware of any use by Plaintiffs of clothianidin on transgenic crops

3   that could arguably fall within the scope of the '469 patent claims.  To the extent that Plaintiffs are

4   alleging that Syngenta suggested that it might enforce its patents in the abstract in response to a

5   hypothetical posed by Sumitomo, that is not sufficient to satisfy DJ jurisdiction.  *Shell Oil Co. v.*

6   *Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992); *see also BridgeLux, Inc.*, 2007 WL 2022024, at

7   *9 ("The fact that Cree stated publicly in press releases or at industry meetings that it would defend

8   its patents is unremarkable.").

9          Thus, on its face, the complaint's conclusory allegation that Syngenta "threatened"

10  Sumitomo (*see* Complaint, ¶ 14) fails to meet the requirements for jurisdiction.  *See Bell Atlantic*,

11  127 S. Ct. at 1965 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

12  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

13  action will not do."); *see, e.g.*, *Hilsenrath v. Shepard*, 2007 WL 2729359, at *2-3 (N.D. Cal. Sept.

14  19, 2007).  Without identifying what was stated by the parties, and the context of the parties'

15  discussion, there is no basis to conclude that any statement by Syngenta amounted to a "threat," let

16  alone a threat that could support DJ jurisdiction.  For example, Plaintiffs do not allege that

17  Syngenta's so-called threat involved Syngenta providing Sumitomo with an infringement analysis,

18  the sort of specific allegation indicative of a real and immediate controversy.  *See, e.g.*, *Monsanto*

19  *Co. v. Syngenta Protection, Inc.*, 2008 WL 294291, at *6 (E.D. Mo. Jan. 31, 2008) (granting motion

20  to dismiss and stating, "there is no indication that Syngenta has provided Monsanto with a claims

21  construction or an analysis of how Monsanto's PARRLAY™ product infringes the patent.").

22  Further, the complaint does not allege that Sumitomo conducts any business in the United States or

23  that Syngenta ever threatened Valent—the party that allegedly conducted small-scale testing of

24  clothianidin on transgenic crops.

25          The Federal Circuit's decisions in *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372

26  (Fed. Cir. 2007), *Sony Elecs. v. Guardian Media Techs.*, 497 F.3d 1271 (Fed. Cir. 2007), and *Micron*

27  *Tech., Inc. v. MOSAID Techs.*, -- F.3d --, 2008 WL 540182 (Fed. Cir. Feb. 29, 2008), demonstrate

28  how different this case is from cases where DJ jurisdiction properly exists under the *MedImmune*

standard. In *SanDisk*, the court found an actual controversy in circumstances where the patentee

engaged in "a course of conduct that shows a preparedness and willingness to enforce its patent

rights." 480 F.3d at 1383. According to the decision, the patentee presented a four-to-five hour

slide show using "seasoned litigation experts" detailing, on a claim-by-claim basis, the infringement

of the patents at issue. *Id.* at 1375, 1382. After the presentation, the patentee provided the alleged

infringer with a 300-page booklet summarizing the infringement analysis and even admitted the

booklet established grounds for DJ jurisdiction. *Id.* Similarly, in *Sony*, the court found an actual

controversy in circumstances where the patent owner specifically alleged infringement by virtue of

concrete acts that the patentee identified. Particularly, the patentee provided the alleged infringers

with a "detailed infringement analysis, which compared on a claim-by-claim basis" a number of

claims with the accused products. *Sony*, 497 F.3d at 1285. The patentee also asserted that it was

entitled to specific amounts in royalties based on allegations of past patent infringement. *Id*.

Likewise, in the recent *Micron* case, the court also found jurisdiction where the patentee, MOSAID,

had affirmatively engaged in an aggressive course of conduct that "strongly suggested" that it would

soon sue the DJ plaintiff, Micron, a leading manufacturer of "DRAM" memory chips. 2008 WL

540182, at *3. Specifically, MOSAID sent "warning letters" to Micron stating that Micron should

accept a license under the patent. *Id.* at *1, 3. The Court also noted that after the first warning

letters were sent, "Micron watched MOSAID sue each of the other leading DRAM manufacturers."

*Id.* at *3. Further, MOSAID announced its intent to continue to litigate as necessary to get suspected

infringers to take licenses, and in fact, sued Micron for patent infringement in another forum the day

after the DJ action was brought. *Id.* at *1-3. None of those facts are present here.

   In sum, Syngenta has expressed a willingness to license Sumitomo under the '469 patent and

in fact has attempted to obtain Bayer's consent to amend the co-exclusive agreement. Further,

Syngenta has not accused Sumitomo or Valent of patent infringement, and has never even had any

communications with Valent regarding the '469 patent. Sumitomo cannot ***unilaterally*** create a

justiciable controversy. Plaintiffs therefore cannot show any actual or imminent injury caused by

Syngenta or otherwise establish a justiciable controversy. *See Teva Pharms.*, 482 F.3d at 1338

(explaining that a DJ plaintiff must establish "an actual or imminent injury caused by the

1  defendant"). Moreover, Syngenta has not engaged in a "a course of conduct that shows a

2  preparedness and willingness to enforce its patent rights" as was the case in the *SanDisk*, *Sony*, and

3  *Micron* decisions. Sumitomo is seeking an impermissible advisory opinion and the immediacy and

4  reality requirements for DJ jurisdiction are entirely absent here. This Court therefore lacks

5  jurisdiction to maintain this suit under the Declaratory Judgment Act. *See Monsanto Co.*, 2008 WL

6  294291, at *6-7. Plaintiffs' deficient factual allegations also fail to state a claim upon which relief

7  may be granted. *See Bell Atlantic*, 127 S. Ct. at 1965.

8      **C.    Assuming an Actual Controversy Is Present, This Court Should Decline to Exercise Jurisdiction**

9

10      As the Supreme Court explained in *MedImmune*, district courts have substantial discretion in

11  deciding whether to entertain DJ actions. *MedImmune*, 127 S. Ct. at 776. Thus, even if a complaint

12  presents an actual controversy under the Declaratory Judgment Act, a plaintiff does ***not*** have an

13  absolute right to judicial intervention. *See Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037,

14  1039 (Fed. Cir. 1995) ("[E]ven if a case satisfies the actual controversy requirement, there is no

15  absolute right to a declaratory judgment, for the statute specifically entrusts courts with discretion to

16  hear declaratory suits or not depending on the circumstances.").

17      The Declaratory Judgment Act is intended to address situations where a patentee engages in

18  "guerilla-like" scare tactics by threatening competitors with suit but never seeking judicial

19  resolution, leaving the competitors with the choice of incurring potential patent infringement liability

20  or abandoning their accused enterprises. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814-15 (Fed.

21  Cir. 1996). The Act was not intended as a means to improve a party's negotiation posture in

22  ongoing license negotiations, and suits filed for such purposes are inappropriate. *See id.*; *see also*

23  *Bausch & Lomb, Inc. v. CIBA Corp.*, 39 F. Supp. 2d 271, 275 (W.D.N.Y. 1999) (dismissing DJ

24  action that "was designed in part as a weapon to strengthen B&L's hand in any [ongoing license]

25  negotiations"). Further, in deciding whether to exercise jurisdiction over a DJ action, the Federal

26  Circuit has explained that district courts "must make a reasoned judgment whether the investment of

27  time and resources will be worthwhile." *See Serco Servs.*, 51 F.3d at 1039. Thus, district courts

28  may "take into account the pendency of serious negotiations to sell or license a patent." *EMC*, 89

Syngenta's Motion to Dismiss Plaintiff' Complaint
Case No. 08-cv-0720-RS

1  F.3d at 814.  Indeed, the need for judicial intervention is "not as compelling" as when there is no

2  prospect for an out-of-court resolution.  *Id*.

3       The circumstances of this case are wholly inconsistent with the purpose of the Declaratory

4  Judgment Act.  Syngenta's actions are the antithesis of the "guerilla-like" scare tactics the Act was

5  designed to address.  Those actions included Syngenta's stated willingness to grant a patent license

6  and efforts to obtain consent from Bayer, which Sumitomo acknowledged demonstrated a

7  "willingness . . . to cooperate" with Sumitomo.  [Puknys Decl., Ex. 9.]  On the other hand,

8  Sumitomo has sought to manufacture jurisdiction and filed this lawsuit in an improper attempt to use

9  the Declaratory Judgment Act to improve its bargaining position in the license discussions.  *See*

10  *EMC,* 89 F.3d at 813-15.

11       Moreover, even if an actual controversy were found to exist, this Court should decline

12  jurisdiction on the grounds of preserving judicial resources.  Syngenta cannot know if and when

13  Bayer, Sumitomo's joint development partner, will consent to a license.  As Sumitomo previously

14  stated in correspondence to Syngenta, Sumitomo is "confident" based on its relationship with Bayer

15  concerning clothianidin that Bayer will consent.  [Puknys Decl., Ex. 6.]  Thus, assuming that

16  Sumitomo diligently pursues this matter with Bayer, there is no reason to believe that Sumitomo will

17  be unable to secure a license prior to Plaintiffs' projected launch date of 2009.  [*See* Complaint at

18  ¶ 32.]  Accordingly, even assuming an actual controversy exists, this Court should still dismiss this

19  action under its discretionary authority to decline adjudication of DJ actions.

20  **IV.     CONCLUSION**

21       For all the foregoing reasons, Syngenta respectfully requests that this Court grant its motion

22  to dismiss.

23

24  DATED:  March 14, 2008                    FINNEGAN, HENDERSON, FARABOW,
                                             GARRETT & DUNNER, LLP
25

26                                  By_____ / s / _____

27                                     Erik R. Puknys
                                    Attorneys for Defendant Syngenta Crop Protection,
28                                    Inc.

Syngenta's Motion to Dismiss Plaintiff' Complaint
                                                            Case No. 08-cv-0720-RS