REGINALD D. STEER (SBN 56324)
AMIT KURLEKAR (SBN 244230)
**AKIN GUMP STRAUS HAUER & FELD LLP**
580 California Street, 15th Floor
San Francisco, California 94104-1036
Telephone:  415-765-9500
Facsimile:  415-765-9501
Email:        RSteer@AkinGump.com

Attorneys for Plaintiffs
VALENT U.S.A. CORPORATION
and SUMITOMO CHEMICAL COMPANY, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| VALENT U.S.A. CORPORATION and SUMITOMO CHEMICAL CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> SYNGENTA CROP PROTECTION, INC., <br><br> Defendant. | **CASE NO. 08-CV-0720 VRW** <br><br> **PLAINTIFFS' RESPONSE TO SYNGENTA'S MOTION TO DISMISS THE COMPLAINT** <br><br> Hearing Date:  June 26, 2008 <br> Hearing Time:  2:30 p.m. <br> Courtroom:  Courtroom 6, 17th floor |

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 2

    A. Plaintiffs Have Taken Major Steps to Enter the Clothianidin Business ...................... 2

    B. Syngenta Seeks To Prevent SCC's U.S. Clothianidin Sales ........................................ 4

        1. SCC's Efforts to Obtain a License Went Nowhere ............................................ 4

        2. Syngenta's Alleged Licensee, Bayer, Also Seeks To Keep Plaintiffs Out Of The Clothianidin Seed Treatment Business ............................................................... 7

III. ARGUMENT .................................................................................................................. 7

    A. Syngenta's Motion Violates Local Rule 7-5 and Should be Stricken .......................... 7

    B. Legal Standards Governing Motions to Dismiss .......................................................... 8

    C. Syngenta's Motion Should Be Denied Because Declaratory Judgment Jurisdiction Clearly Exists ................................................................................................................. 9

        1. Legal Standard For Declaratory Judgment Jurisdiction ..................................... 9

        2. Based On "All The Circumstances" There Is No Question That A Substantial Controversy Exists Between The Parties ...................... 11

            a. A Substantial Controversy Exists ............................................................... 11

            b. This Controversy is Immediate and Real .................................................. 12

            c. Syngenta's Arguments are Without Factual or Legal Merit ..................... 14

        3. The Court Should Exercise Its Declaratory Judgment Jurisdiction .................. 16

IV. CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

Cases

*Beverly v. Network Solutions, Inc.,*
    1998 WL 917526, 1998 U.S. Dist. LEXIS 20453 ...................................................... 7, 11

*CAT Tech LLC v. TubeMaster, Inc.,*
    --- F.3d ---, 2008 WL 2188049, 2008 U.S. App. LEXIS 11377
    (Fed. Cir. May 28, 2008) ................................................................................... 10, 12, 13

*Chaganti v. I2 Phone Int'l, Inc.,*
    2005 WL 679664 (N.D. Cal. 2005) ............................................................................ 8, 9

*Jiang v. Chertoff,*
    2008 WL 1899245 (N.D. Cal. April 28, 2008) ................................................................ 8

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118, 127 S.Ct. 764 (2007) ........................................................ 1, 9, 10, 12, 14, 16

*Micron Technology, Inc. v. Mosaid Technologies, Inc.,*
    518 F.3d 897 (Fed. Cir. 2008) ................................................................................ 9, 10, 16

*SanDisk Corp. v. STMicroelectronics, Inc.,*
    480 F.3d 1372 (Fed. Cir. 2007) .......................................................................... 9, 10, 12, 14, 16

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.,*
    482 F.3d 1330 (Fed. Cir. 2007) ....................................................................................... 9

Other Authorities

49 U.S.P.Q.2d 1567 ............................................................................................................. 7

FED. R. CIV. P. 8(a) ............................................................................................................ 8

FED. R. CIV. P. 12(b)(1) ..................................................................................................... 8

FED. R. CIV. P. 12(b)(6) ..................................................................................................... 8

Federal Local Rule 7-5 ................................................................................................. 7, 8, 9

U.S. Patent No. 5,034,404 ........................................................................................... 2, 4, 13

U.S. Patent No. 7,105,469 ................................................... 1, 2, 3, 4, 5, 6, 7, 11, 12, 14, 15, 16

## I. INTRODUCTION

The opposing parties in this case are on an imminent and inevitable collision course over the legality of the plaintiffs' planned U.S. manufacture and sales of the insecticide clothianidin -- precisely the factual circumstances that create declaratory judgment jurisdiction, according to the U.S. Supreme Court. In its landmark decision of *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764 (2007), the Supreme Court articulated an "all circumstances" legal standard that facilitates and enhances the availability of declaratory judgment jurisdiction in patent cases. At the same time, the Supreme Court rejected the Federal Circuit's "reasonable-apprehension-of-suit" test, upon which Syngenta relies in its motion. According to *MedImmune,* jurisdiction exists upon a showing of a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Such a controversy exists in this case.

As shown in the Declaration of Motoharu Moriya filed herewith, over the past several years, Valent U.S.A. Corporation and Sumitomo Chemical Company, Ltd. (collectively "Plaintiffs" or "SCC") have spent millions of dollars preparing for a December 2008 product launch of clothianidin for treatment of genetically modified plants and their seeds. . Defendant Syngenta Crop Protection, Inc. ("Syngenta"), the owner of U.S. Patent No. 7,105,469 ("the '469 patent") and its alleged co-exclusive licensee, Bayer Crop Science AG ("Bayer"), threaten to block Plaintiffs' sales for seed treatment by asserting the '469 patent, which purports to cover the treatment of genetically engineered plants and their seeds with clothianidin. During the parties' failed license discussions, Syngenta told Plaintiffs that it does not want to see any new entrants in the seed treatment business and on two occasions threatened Plaintiffs with a lawsuit under the '469 patent. These facts establish jurisdiction.

Syngenta's motion relies heavily on its speculation that its alleged co-exclusive licensee, Bayer, might agree to license the '469 patent to Plaintiffs, and thereby eliminate the present controversy. This speculation not only lacks any evidentiary support, it is also legally irrelevant. Under *MedImmune,* even if Plaintiffs had a license from Syngenta, they still would have standing to obtain a declaratory judgment as to the validity of the '469 patent. Moreover, the history of Plaintiffs' long efforts to engage Syngenta and Bayer in discussions, and Bayer's own statements, belie any reasonable possibility of consent from Bayer.

1    For these reasons, a substantial controversy in law and fact clearly exists between the parties, and Syngenta's motion to dismiss should be denied. Plaintiffs are not required to "bet the farm" before obtaining a judicial determination of their rights to sell clothianidin for treating genetically engineered plants and their seeds.

## II.    STATEMENT OF FACTS

### A.    Plaintiffs Have Taken Major Steps to Enter the Clothianidin Business

Over the past several years, Plaintiffs have made substantial investments preparatory to making and selling clothianidin for the treatment of genetically engineered plants and their seeds. Clothianidin is a commercially important insecticide because of its effectiveness against a wide range of insects. *See* Declaration of Motoharu Moriya in Support of Plaintiffs' Response to Syngenta's Motion to Dismiss the Complaint ("Moriya Decl.") at ¶ 7; Complaint ¶¶ 13, 28. These investments began in 2002 when SCC acquired the agricultural-chemical business of Takeda Pharmaceuticals ("Takeda") business. Moriya Decl. at ¶ 8; Complaint ¶¶ 22-24. The central focus of this acquisition was Takeda's U.S. Patent No. 5,034,404 ("the '404 patent"), which claims clothianidin, a compound invented by Takeda scientists. Moriya Decl. at ¶ 9. Acquisition of the '404 patent removed a significant legal obstacle to U.S. sales of clothianidin, although sales for seed treatment were delayed by five years due to a pre-existing exclusive license that Takeda had granted Bayer on the '404 patent for seed treatment.

As part of the acquisition agreement, SCC and Takeda operated a joint venture known as Sumitomo Chemical Takeda Agro Company ("Sumitake") from November 2002 until November 2007. One of the purposes of Sumitake was to develop clothianidin for seed treatment by conducting field testing on certain types of crops. Those tests occurred over several growing seasons. In November 2007, the Sumitake joint venture merged into SCC. Moriya Decl. at ¶ 11, 8.

Beginning this December, Plaintiffs will be making clothianidin and offering it for sale in the United States for use on seeds, including seeds of genetically engineered plants.[1] Moriya Decl. at ¶ 9.

---

[1]    Pursuant to the terms of a pre-existing license agreement between Takeda and Bayer, Bayer has the exclusive right to sell clothianidin in the U.S. for the treatment of seeds. That exclusive right expires in November 2008 with a few exceptions. Moriya Decl. at ¶ 9.

1 surrounding SCC's freedom to operate in view of Syngenta's '469 patent. Moriya Decl. at ¶ 11j.

### B. Syngenta Seeks To Prevent SCC's U.S. Clothianidin Sales

The '469 patent issued to Syngenta in September 2006, well after SCC had acquired the '404 patent and launched its testing program. *See* '469 patent, a true and correct copy of which is attached as Memorandum Exhibit 1. Syngenta claims that it then quickly entered into a co-exclusive license agreement with Bayer, so that it cannot license SCC under the '469 patent without Bayer's approval. Moriya Decl. at ¶ 16.

The terms of that agreement -- indeed, its very existence -- cannot be confirmed because Syngenta has steadfastly refused to produce it. But according to Syngenta, both parties to that agreement (*i.e.*, both Syngenta and Bayer) must agree before licensing another party (*e.g.*, Plaintiffs) under the '469 patent. April 8, 2008 Email from Puknys to Sherwood, attached as Sherwood Exhibit 2. Thus, either party to that alleged agreement has veto power to preserve the *status quo* and to keep all others out of the clothianidin seed treatment business -- the business Plaintiffs are now poised to enter. At present, Syngenta and Bayer control virtually all U.S. sales of clothianidin for seed treatment, a major portion of which is treatment of the seeds of genetically engineered plants, sales that exceeded $161 million in sales in 2006 alone. Moriya Decl. at ¶ 32.

#### 1. SCC's Efforts to Obtain a License Went Nowhere

Syngenta has known of SCC's preparations and intentions to enter the genetically engineered seed treatment business, a major portion of which is seed treatment for genetically engineered plants, at least since the parties met in October 2006. At that first meeting, SCC informed Syngenta of its intentions to enter the seed treatment business and that, in light of those intentions, SCC would be interested in obtaining a license under Syngenta's '469 patent as an expeditious way to avoid a potential dispute between the parties. Moriya Decl. at ¶ 15. In doing so, SCC never conceded or agreed that the '469 patent is valid.

At first, Syngenta told SCC that, in light of the alleged co-exclusive license agreement, SCC needed to contact Bayer and get its consent for a license. Moriya Decl. at ¶ 16. SCC set up a meeting with Bayer in Germany six days later. But, when SCC arrived in Germany to meet with Bayer, Bayer told SCC to meet with Syngenta because Syngenta owns the patent. Moriya Decl. at ¶ 17. This

4

see any new entrant in the seed treatment business. Moriya Decl. at ¶ 25. At the same time, Syngenta again conveyed that it would enforce the '469 patent against SCC if SCC began selling clothianidin on genetically engineered crops. Moriya Decl. at ¶ 21. And finally, in October 2007, Syngenta told SCC that it was unable to obtain Bayer's consent and that it had effectively given up trying since the talks between the top executives did not work. Moriya Decl. ¶ 21.

In sum, SCC tried to negotiate with Syngenta in good faith, and with the patience and perseverance for which successful Japanese companies are known and respected. Eventually, it became apparent to SCC that Syngenta and its alleged business partner, Bayer, do not want anyone else, including SCC, in the seed treatment business at all, that there will be no license forthcoming under the '469 patent and that sales by SCC will be met by a patent infringement lawsuit. Moriya Decl. at ¶ 25, 24; Complaint ¶¶ 14, 25, 26.[3] After having expended so much time, energy and resources on clothianidin for seed treatment of genetically engineered plants, SCC responded the only way it could -- it informed Syngenta that it believes the '469 patent is invalid and that it intends to adjudicate its invalidity.[4] Moriya Decl. at ¶ 27. Shortly thereafter, Plaintiffs filed this lawsuit. Unfortunately, SCC is already in the "bet the farm" position because its enduring efforts to negotiate

---

[3] Syngenta asserts that "it is agreeable in principle to granting Sumitomo a license" and that it has stated a "willingness to grant a patent license." Syngenta Mot. at 2, 10. But the only evidence Syngenta relies upon for these assertions is SCC's belief, early on during the license discussions between the parties, that Syngenta was willing to grant a license. See, e.g., Exhibits 8 and 9 to Syngenta's Mot. As discussed above, SCC's state of mind with regard to Syngenta's willingness to license took a drastic change when Syngenta eventually made clear that it did not want SCC to enter the seed treatment business.

Notably, Syngenta does not present any evidence that it was willing to grant a license in light of the facts presented by Plaintiffs. Moreover, if Syngenta did have any such evidence, it was obligated to present it in its opening brief since Syngenta was on notice of the allegations in Plaintiffs' complaint that the so-called licensing negotiations were fruitless and futile. Thus, to the extent Syngenta purports to present any "new" evidence in its reply brief that it could have presented in its opening brief, it should be stricken. *See, e.g., Hamilton v. Williams*, 2007 WL 2558615 at *11 (E.D. Cal. 2007) (citing *Serpa v. SBC Telecommunications, Inc.*, 2004 WL 2002444 at *5, n.4 (N.D. Cal. 2004). Further, this is just one example of Syngenta's failure to cite evidence to support an assertion in its opening brief where it was obligated to do so. There are other instances of Syngenta's disregard for the rules and for notions of fairness.

[4] Although Sumitomo has believed from the start that the '469 patent is invalid, it asked for a license in order to avoid a legal confrontation that could endanger its business plans. When it became clear that no such license was forthcoming, and that Syngenta was using the '469 patent to keep Plaintiffs out of the seed treatment business, Sumitomo was left with no choice but to seek an order invalidating the '469 patent.

have brought it close to its product launch date without any resolution. The instant motion, if successful, places Plaintiffs in the unfair position of having to choose between entering the market with the assurance that an infringement lawsuit will follow, or abandon their plans to sell the product for seed treatment at all -- exactly what the Supreme Court stated Plaintiffs should not have to do.

   **2. Syngenta's Alleged Licensee, Bayer, Also Seeks To Keep Plaintiffs Out Of The Clothianidin Seed Treatment Business**

During the discussions between SCC and Bayer, it became clear that Bayer was also seeking to keep SCC out of the seed treatment business and therefore, would not consent to a license under the '469 patent. For example, Bayer told SCC that it wanted to preserve its co-exclusive license with Syngenta. Moriya Decl. at ¶ 22.

In response, SCC explained to Bayer that it believes that the '469 patent is invalid and that it will take the necessary steps to have the '469 patent declared invalid. Moriya Decl. at ¶ 27.

## III. ARGUMENT

### A. Syngenta's Motion Violates Local Rule 7-5 and Should be Stricken

Under Local Rule 7-5, "[f]actual contentions made in support of . . . any motion must be supported by . . . appropriate references to the record." As discussed above, Syngenta's motion contains numerous references to an alleged co-exclusive license with Bayer. *See* Syngenta Motion at 2-4, 6, 8, and 10. For example, Syngenta asserts that it must have Bayer's consent in order to grant Plaintiffs a license under the '469 patent. However, Syngenta does not prove the existence or contents of the alleged agreement to support this assertion, as it is required to do under Local Rule 7-5. *See Beverly v. Network Solutions, Inc.*, 1998 WL 917526 at *5, 1998 U.S. Dist. LEXIS 20453 at *13, 49 U.S.P.Q.2d 1567 (N. D. Cal. 1998) ("Unsworn statements appearing in the body of a motion or supporting memorandum cannot be considered as evidence."). Thus, at best, Syngenta's assertions are nothing more than attorney argument and are not evidence in support of its motion.

Plaintiffs gave Syngenta an opportunity to cure this defect, but Syngenta refused. After Syngenta filed its motion, Plaintiffs requested a copy of this alleged co-exclusive license with Bayer. *See* April 2, 2008 letter from Sherwood to Puknys, attached as Sherwood Exhibit 1. Syngenta responded by asserting that it was not "at liberty to provide that agreement" to Plaintiffs "in the

absence of a protective order." *See* April 8, 2008 Email from Puknys to Sherwood, attached as Exhibit 2. Plaintiffs then offered to negotiate a protective order to address any possible confidentiality issues. *See* April 10, 2008 Letter from Sherwood to Puknys, attached as Sherwood Exhibit 3. Syngenta again rejected Plaintiffs offer. *See* April 22, 2008 Letter from McCurdy to Sherwood, attached as Sherwood Exhibit 4. Thus, since Syngenta's motion does not comply with Local Rule 7-5 and since Syngenta has failed to cure this defect after being given opportunities to do so, its motion should be stricken.

Upon striking the motion and accepting SCC's well pleaded allegations, the Court can readily satisfy itself as to jurisdiction, as it is readily apparent that jurisdiction exists based on those allegations.

### B. Legal Standards Governing Motions to Dismiss

When the complaint is challenged for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), all material allegations in the complaint will be taken as true and construed in the light most favorable to plaintiff. *Jiang v. Chertoff*, 2008 WL 1899245 at *1 (N.D. Cal. April 28, 2008) (citing *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986)). That is the standard that applies to resolution of this motion and Syngenta's challenge to the Court's jurisdiction.

Syngenta also asserted that its motion arises under FED. R. CIV. P. 12(b)(6). A similar standard applies to that argument. In deciding a motion under FED. R. CIV. P. 12(b)(6), Courts look to FED. R. CIV. P. 8(a) as the standard for whether a cognizable claim exists. *Chaganti v. I2 Phone Int'l, Inc.*, 2005 WL 679664 at *1 (N.D. Cal. 2005) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). Rule 8(a) states that a plaintiff's pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This standard is a liberal one that does not require a plaintiff to set forth all the factual details of the claim; rather, all that the standard requires is that a plaintiff give the defendant fair notice of the claim and the grounds for making that claim. *Chaganti* (citing *Leatherman v. Tarrant County Narcotics Intell & Coord Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). To this end, a plaintiff's complaint should set forth "either direct or inferential allegations with respect to all the material elements of the claim." *Chaganti* (citing *Wittstock v. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir.2003)).

Under Rule 12(b)(6), a complaint "should not be dismissed for failure to state a claim unless it

8

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chaganti* (citing *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)); see also *Conley*, 355 U.S. at 45-46. Further, all material allegations in the complaint must be taken as true and construed in the light most favorable to plaintiff. *Chaganti* (citing *In re Silicon Graphics Inc. Sec Litig.*, 183 F.3d 970, 980 n10 (9th Cir 1999)).

### C.  Syngenta's Motion Should Be Denied Because Declaratory Judgment Jurisdiction Clearly Exists

If the Court decides that it will not strike Syngenta's motion for failure to comply with Local Rule 7-5, Syngenta's motion should, nonetheless, be denied since the facts of this case, as set forth in Plaintiffs' Complaint and in the Moriya Declaration, clearly and overwhelmingly establish that declaratory judgment jurisdiction exists.

#### 1.  Legal Standard For Declaratory Judgment Jurisdiction

In 2007, the Supreme Court clarified the standard for establishing declaratory judgment jurisdiction in patent cases when it decided *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). *MedImmune* creates *a more lenient legal standard* that actually *facilitates* and *enhances* the availability of declaratory judgment jurisdiction in patent cases. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008) (emphasis added).

In *MedImmune*, the Supreme Court rejected the Federal Circuit's "reasonable-apprehension-of-suit" test in favor of an *"all the circumstances"* test. In order to establish declaratory judgment jurisdiction, a plaintiff need only prove that "the facts alleged, *under all the circumstances*, show that there is a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 127 S.Ct. at 771 (emphasis added); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007). A patentee's threats to sue are considered as part of "all the circumstances" in determining whether a substantial controversy exists between the parties. *Micron*, 518 F.3d at 901, but they are not a prerequisite to finding declaratory judgment jurisdiction.

*MedImmune* also recognized that a company should not be placed in the position of either

1  refraining to undertake activity which it believes it is legally entitled to undertake, or undertaking that
2  activity with the threat of liability for its action. "The declaratory judgment procedure is an alternative
3  to pursuit of the arguably illegal activity"; it does not require "that the plaintiff bet the farm, so to
4  speak, by taking the violative action." *MedImmune*, 127 S. Ct. at 772.

5  The Federal Circuit has written on this rule of law as well. First, in interpreting *MedImmune*,
6  the Federal Circuit stated "[w]here a patentee *asserts rights under a patent* based on certain identified
7  *ongoing or planned activity of another party*, and where that party contends that it has the right to
8  engage in the accused activity *without license*, an Article III case or controversy will arise and the
9  party *need not risk a suit for infringement* by engaging in the identified activity before seeking a
10 declaration of its legal rights." *SanDisk*, 480 F.3d at 1381 (emphasis added). The Federal Circuit has
11 also explained that parties have "adverse legal interests" when there is an "underlying legal cause of
12 action that the declaratory defendant could have brought or threatened to bring, if not for the fact that
13 the declaratory plaintiff has preempted it." *Microchip Tech., Inc. v. Chamberlain Group, Inc.*, 441
14 F.3d 936, 943 (Fed. Cir. 2006).

15 Second, the Federal Circuit clarified the meaning of immediacy and reality when applying this
16 test. *CAT Tech LLC v. TubeMaster, Inc.*, --- F.3d ---, 2008 WL 2188049 at *6, 2008 U.S. App. LEXIS
17 11377 at *16 (Fed. Cir. May 28, 2008). A dispute is "immediate" where the declaratory judgment
18 plaintiff has taken significant, concrete steps to conduct alleged infringing activity. *CAT Tech*, 2008
19 WL 2188049 at *7, 1998 U.S. App. LEXIS 11377 at *19, even though the party is not engaged in the
20 actual manufacture or sale of the potentially infringing product. *Id,.* 2008 WL 2188049 at *7, 1998
21 U.S. App. LEXIS 11377 at *20 ("a showing of 'meaningful preparation' for making or using that
22 product" is required). With regard to "reality," the Federal Circuit stated that "[i]n the context of
23 patent litigation, the reality requirement is often related to the extent to which the technology in
24 question is 'substantially fixed' as opposed to 'fluid and indeterminate' at the time declaratory
25 judgment is sought. *Id.*; 2008 WL 2188049 at *8, 1998 U.S. App. LEXIS 11377 at *24.

26 Finally, in *Micron*, the Federal Circuit reiterated the Supreme Court's "bet the farm" analysis,
27 stating that "[t]he purpose of the Declaratory Judgment Act . . . in patent cases is to provide the
28 allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Micron Tech.*,

*Inc. v. Mosaid Techs., Inc.*, 518 F.3d at 902.

### 2. Based On "All The Circumstances" There Is No Question That A Substantial Controversy Exists Between The Parties

#### a. A Substantial Controversy Exists

First, as described above, there is an "underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it," and thus the party's have "adverse legal interests." *Microchip Tech.*, 441 F.3d at 943. For example, Syngenta could bring an action for patent infringement against Plaintiffs for their ongoing testing of clothianidin to treat genetically engineered plants and their seeds. Syngenta has also threatened Plaintiffs with a patent infringement lawsuit if they sell clothianidin in connection with treating genetically engineered plants and their seeds.

Further, the fact that the parties substantially disagree as to the legality of the Plaintiffs' manufacture and planned U.S. sales of the insecticide clothianidin for the treatment of genetically engineered plants and their seeds has created adverse legal interests between the parties. Syngenta has demonstrated its legal interest in preserving the validity of the '469 patent and its ability to assert that patent against SCC by twice threatening to sue for infringement if SCC undertakes U.S. sales of clothianidin for treatment of genetically engineered plants and their seeds. Moriya Decl. at ¶ 21, 23. Such sales by SCC would compete against Syngenta's sales of its product, thiamethoxam, which is presumably one reason why Syngenta seeks to block SCC from the seed treatment business. Moriya Decl. at ¶ 13. According to Syngenta, it has licensed this patent to Bayer and enjoys a revenue stream from that license agreement. Clothianidin sales by SCC would reduce Bayer's sales and consequently, Syngenta's royalty revenue from Bayer. If the '469 patent is declared invalid, Syngenta will be unable to assert it against SCC and prevent U.S. sales by SCC of clothianidin on genetically engineered plants and their seeds, and Syngenta could lose the benefit of its royalty revenue from Bayer because most license agreements provide that a subsequent declaration of invalidity excuses any further duty to pay a royalty.[5] Syngenta's legal interests therefore strongly favor preservation of the patent's validity.

---

[5] SCC cannot offer any evidence on this point because Syngenta has refused to produce the agreement and resists any effort to initiate discovery, even though Syngenta relies upon the agreement to support its motion.

11

SCC, on the other hand, has already invested millions of dollars and years of effort to be able to sell clothianidin lawfully for treatment of seeds and crops, including genetically engineered seeds and crops. Much of this investment occurred prior to issuance of the '469 patent. After issuance of the patent, SCC analyzed it and determined that it is invalid. Despite this determination, however, SCC attempted to negotiate with Syngenta regarding a possible license whose terms would reflect SCC's views as to the validity of the patent. SCC's efforts, including even learning Syngenta's possible terms, were entirely unsuccessful. The record is clear that neither Syngenta nor its co-exclusive licensee Bayer wish to license SCC (and thus to permit sales by SCC) and that further efforts to discuss would be futile. SCC's legal interests strongly favor a legal determination that the '469 patent is invalid so that SCC may have a financial return on its purchase of Takeda's clothianidin business and on its subsequent investment in clothianidin product development, marketing and sales.

All of these circumstances show a substantial controversy of the parties involving adverse legal interests within the meaning of *MedImmune*.

Applying the Federal Circuit's description of the controversy requirement, it would also be met: (1) a patentee (Syngenta) is asserting its rights (through its threats of suit and its insistence that SCC needs a license) based on (2) certain identified ongoing or planned activity of another party (all of SCC's ongoing and planned business activities to sell clothianidin for genetically engineered seed treatment as described in the Moriya Declaration) (3) where that party contends that it has the right to engage in the accused activity without a license (just as SCC contends that no license is needed under the '469 patent since it is invalid).

### b.  This Controversy is Immediate and Real

According to *MedImmune* and *SanDisk*, the controversy must be immediate and real. Both of those elements are present here because the plaintiffs have taken defined and concrete steps to conduct potentially infringing activity with a well defined specific product. *CAT Tech,* 2008 WL 2188049 at *7.

The Federal Circuit, in *CAT Tech*, described both of these elements. For immediacy, the court wrote that "a party need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of non-infringement, if there is a showing of 'meaningful

12

preparation' for making or using that product." *Id.* at *7.

There can be no doubt of SCC's meaningful preparation. Over the past several years SCC has made substantial investments to enter the Clothianidin Insecticide business, including i) payment of a substantial amount of money in 2002 to acquire Takeda's agricultural-chemical business and the '404 patent, which covers the use of clothianidin, in general (*supra* at II.A.); ii) the formation of a joint development group, Sumitake, to develop clothianidin foliar and seed treatment sales and to conduct field testing (2005-present) in several different locations throughout the U.S. at a cost of several million dollars, (*supra* at II.A.); iii) the application for trademark protection for the seed treatment products it intends to sell; iv) the preparation and submission of a pesticide registration with the E.P.A., as well as in 10 states for use of clothianidin on plants and seeds, including genetically engineered plants and seeds (*supra* at II.A.); v) the contracting with business partners, including Helena Industries, Inc., to make two clothianidin products that will be sold to treat genetically engineered seeds and crops (*supra* at II.A.); and vi) meetings with at least ten potential customers for its Clothianidin seed treatment business. Moreover, SCC will begin making clothianidin and offering it for treatment of genetically engineered plants and seeds for sale in less than six months.

Not only have Plaintiffs been engaged in extensive preparations to enter the seed treatment business for the past several years, but also for the past 3 years, that preparation has included actually using clothianidin to treat genetically engineered plants and their seeds. To borrow the Supreme Court's phrasing, SCC has already "bet the farm" through its testing program, which further demonstrates that this controversy is ripe for resolution by declaratory judgment. All of these activities, past and ongoing, easily satisfy the requirement of meaningful preparation and thus, the "immediacy" requirement is clearly met.

With regard to "reality," the Federal Circuit, in *CAT Tech*, stated that "[i]n the context of patent litigation, the reality requirement is often related to the extent to which the technology in question is 'substantially fixed' as opposed to 'fluid and indeterminate' at the time declaratory judgment is sought. Accordingly, '[t]he greater the variability of the subject of a declaratory-judgment suit, particularly as to its potentially infringing features, the greater the chance that the court's judgment will be purely advisory, detached from the eventual, actual content of that subject – in short, detached

13

from eventual reality.'" *Id.* at *8.

This variability is not present here. SCC's field testing was designed to determine the proper concentrations and formulations of clothianidin for use on genetically engineered plants and their seeds for insect control under different planting conditions. The chemical nature of clothianidin itself, the product being used on genetically engineered plants or their seeds for insect control, which use is allegedly infringing, is absolutely fixed. This same chemical has been used in every one of SCC's field tests and will be present in every product whose use is at issue in this case. The Court's judgment in this case therefore would not be purely advisory or detached from reality because it would be a judgment on the very same chemical ingredient that SCC has manufactured and used already and will be making and offering for sale for use in a potentially infringing manner within a matter of months. Moriya Decl. at ¶ 9.

Thus, the products involved are substantially fixed and there is nothing fluid or indeterminate about them. As a result, the Federal Circuit's "reality" test is clearly met.

    **c.  Syngenta's Arguments are Without Factual or Legal Merit**

Syngenta asserts that there is no jurisdiction because Syngenta "has expressed a willingness to license" SCC under the '469 patent. Syngenta Mot. at 8. But even if this were true -- and it is not (*see supra* at n.3) -- this assertion is legally irrelevant since the Federal Circuit has already stated that it "reject[s] the [defendant's] suggestion that there can be no jurisdiction in the courts because it was at all times willing to negotiate a 'business resolution' to the dispute." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1286 (Fed. Cir. 2007). In *SanDisk*, the court recognized that a patentee's apparent continued willingness to engage in licensing negotiations does not prevent a plaintiff from maintaining a declaratory judgment suit." *Id.* at 1286. The Federal Circuit also stated that "even if the parties' interactions in this case could be characterized as 'negotiations,' [the declaratory judgment plaintiff] was within its rights to terminate them when it determined that further negotiations would be unproductive." *Id.* And in *MedImmune*, the Supreme Court found jurisdiction even though the patentee had already licensed the alleged infringer. *MedImmune*, 127 S.Ct. at 777. Syngenta's "willingness to license" argument thus has no legal merit.

Syngenta also wrongly asserts, without any evidence, that it "never, in fact, charged Plaintiffs

with infringing the '469 patent." Syngenta Mot. at 6. The only record evidence shows that on two separate occasions, June 12, 2007 and July 31, 2007, Syngenta threatened Plaintiffs with a lawsuit under the '469 patent. *See supra* at II.B.1. In its brief, Syngenta attempts to equate its specific threats with the generalized public statement of patent enforcement in "press releases" and "industry meetings" made in *BridgeLux, Inc. v. Cree*, 2007 WL 2022024, 2007 U.S. Dist. LEXIS 53137 (N.D. Cal. 2007). Syngenta Mot. at 7. But Syngenta was not making any such generalized public statements when it threatened Plaintiffs on those two occasions. Rather, Syngenta told Plaintiffs directly in business meetings and correspondence between the two companies that it would enforce the '469 patent against the Plaintiffs for sales of clothianidin to treat genetically engineered plants and their seeds and, later, that Plaintiffs could not use clothianidin on genetically engineered plants and their seeds without being sued for patent infringement.

Syngenta also asserts that it "has not engaged in a 'course of conduct that shows a preparedness and willingness to enforce its patent rights." Syngenta Mot. at 9. But, as discussed above, the only record evidence on this point refutes Syngenta's statements. In addition to the threats it made to SCC, Syngenta had allegedly already licensed its '469 patent to Bayer for a substantial sum of money. Moriya Decl. at ¶ 24. Also, Syngenta finally admitted – after stringing Plaintiffs along for months on end -- that it did not want to see any other entrants in the seed treatment business. In view of all these facts, SCC believes that Syngenta could sue Plaintiffs once they begin making clothianidin and offering it for sale on genetically engineered plants or their seeds. Moreover, in *Caraco Pharm. Labs., Inc. v. Forest Labs., Inc.*, --- F.3d ---, 2008 WL 850330 (Fed. Cir. 2008), the Federal Circuit found declaratory judgment jurisdiction despite the defendant's covenant not to sue the plaintiff, which obviously eliminated all risk of suit. Caraco, 2008 WL 850330 at *14. If jurisdiction existed in *Caraco*, it exists *a fortiori* in this case where Syngenta's conduct shows an intent to sue. As a result, this Syngenta argument also lacks factual or legal merit.

To the extent Syngenta seeks to distinguish its conduct from the conduct of patentees in certain other cases (*e.g.*, where the patentee sent a claim infringement analysis, etc. to the plaintiff), those arguments are unpersuasive because the Supreme Court found declaratory judgment jurisdiction *without* such specific actions taken by the patentee, and even though the plaintiff had a license under

15

the patent it was then seeking to challenge. *MedImmune*, 127 S. Ct. at 777; *see also* Caraco, 2008 WL 850330 at *14 (declaratory judgment jurisdiction exists despite covenant not to sue).

Syngenta also argues that Bayer may consent to a license for Plaintiffs, thereby eliminating any controversy. This argument lacks both legal and factual merit. First, there is no competent evidence that Bayer's consent is needed to grant a license under the '469 patent. Second, even if such evidence did exist, Bayer made perfectly clear to SCC that it would not give its consent to a license. *Supra* at II.B.2. Furthermore, Syngenta never responded to SCC's proposed license terms, after having asked for them, so it is entirely uncertain whether a satisfactory license could be negotiated with Syngenta, the patent owner, even if Bayer did consent. And finally, *MedImmune* teaches that subject matter jurisdiction would exist even if SCC received such a license from Syngenta and Bayer.

The Bayer argument is a red herring. Syngenta is the assignee of the '469 patent, and it is the proper defendant and respondent to this action. Should discovery reveal that Bayer is a party with substantial rights who should be joined in this action, Plaintiffs will move to amend their complaint and name Bayer as an additional defendant. But that does not change the fact that declaratory judgment exists on these facts and that there is a substantial controversy between Plaintiffs and Syngenta. Thus, Plaintiffs can maintain this lawsuit so as to seek relief from uncertainty and further delay regarding their legal rights. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. Feb. 29, 2008).

### 3.   The Court Should Exercise Its Declaratory Judgment Jurisdiction

As the Federal Circuit stated, "when there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal." *SanDisk*, 480 F.3d at 1383. If a court chooses not to adjudicate an actual case of controversy, "the exercise of discretion must be supported by a sound basis for refusing to adjudicate an actual controversy." *Id.*

As discussed above, Plaintiffs have taken every reasonable step in order to resolve this controversy without resort to the courts. However, they cannot resolve the dispute on their own and therefore, after more than 15 months of delay, deceit and fruitless discussions, Plaintiffs find themselves needing the Court's declaration that the '469 patent is invalid.

16
PLAINTIFFS' OPPOSITION TO SYNGENTA'S MOTION TO DISMISS THE COMPLAINT     CASE NO. 08-CV-0720 VRW

## IV. CONCLUSION

SCC wasted almost one year trying to negotiate a license for a patent that it has never believed to be valid. Syngenta and Bayer abused this good faith, delaying any meaningful response in a calculated effort to exclude SCC from selling clothianidin for seed treatment. The instant motion by Syngenta continues those tactics; not only do the facts fully support such jurisdiction, but every legal argument that Syngenta offers has been explicitly rejected by recent Supreme Court and Federal Circuit decisions. And notably, Syngenta offered virtually no relevant evidence to support any of its arguments. Only one conclusion can be drawn from the Syngenta filing – it was a deliberate attempt to further delay resolution of this case, not a sincere, evidence-based challenge to SCC's theory of jurisdiction that relied upon current principles of declaratory judgment jurisdiction.

For all the foregoing reasons, Syngenta's motion should be denied.

DATED:     June 12, 2008

AKIN GUMP STRAUS HAUER & FELD LLP

By: *Reginald D. Steer* (signature)
Reginald D. Steer
Attorney for Plaintiffs Valent U.S.A. Corporation and Sumitomo Chemical Company, Ltd.

PLAINTIFFS' OPPOSITION TO SYNGENTA'S MOTION TO DISMISS THE COMPLAINT        CASE NO. 08-CV-0720 VRW

**Of Counsel**:

ARTHUR WINEBURG
MICHAEL A. OAKES
DANIEL E. YONAN
**AKIN GUMP STRAUSS HAUER & FELD, LLP**
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: 202.887.4000
Facsimile: 202.887.4288


JEFFREY K. SHERWOOD
**DICKSTEIN SHAPIRO LLP**
1825 Eye Street NW
Washington, DC 20006-5403
Telephone: 202-420-3602
Facsimile: 202-420-2201


WILLIAM W. SCHWARZE
WEIHONG HSING
**PANITCH SCHWARZE BELISARIO & NADEL LLP**
2005 Market Street
Suite 2200
Philadelphia, PA 19103
Telephone: 215-965-1330
Facsimile: 215-965-1331