Erik R. Puknys
(CAB #190926; erik.puknys@finnegan.com)
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Attorneys for Defendant
SYNGENTA CROP PROTECTION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| VALENT U.S.A. CORPORATION and SUMITOMO CHEMICAL CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> SYNGENTA CROP PROTECTION, INC., <br><br> Defendant. | CASE NO. 08-cv-0720 VRW <br><br> **SYNGENTA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> Hearing Date: June 26, 2008 <br> Hearing Time: 2:30 p.m. <br> Courtroom 6, 17th floor |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................1

II. STATEMENT OF FACTS ...................................................................................................2

III. STATEMENT OF THE ISSUE TO BE DECIDED............................................................7

IV. REPLY ...................................................................................................................................7

    A. Plaintiffs' Response Is Premised on Incorrect Legal Standards .............................7

        1. Plaintiffs Fail to Acknowledge That They Have the Burden to Prove Jurisdiction...................................................................................................7

        2. The Allegations of the Complaint Are Not "Taken as True" in Assessing Jurisdiction..................................................................................8

    B. Plaintiffs Have Failed to Establish That They Are Actually Prepared to Enter the Market ................................................................................................................8

        1. Plaintiffs Have No Customers .....................................................................9

        2. Plaintiffs Have No Finished Products.........................................................10

        3. Plaintiffs Have Contractual Restrictions on Their Ability to Enter the Market .........................................................................................................11

    C. Plaintiffs Have Failed to Meet Their Burden of Establishing an Actual and Immediate Injury Caused by Syngenta................................................................11

        1. Plaintiffs Cannot Unilaterally Create a Justiciable Case or Controversy ..11

        2. The Cases Cited By Plaintiffs Are Distinguishable..................................12

    D. Sumitomo's Local Rule 7-5 Argument Lacks Merit ...........................................14

    E. Assuming an Actual Controversy Is Present, This Court Should Decline to Exercise Jurisdiction ...............................................................................................14

V. CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*,
   501 F.3d 1307 (Fed. Cir. 2007)..................................................................................9

*Benitec Australia, LTD. v. Nucleonics, Inc.*,
   495 F.3d 1340 (Fed. Cir. 2007).................................................................7, 8, 11, 12

*Caraco Pharmaceutical Laboratories, Inc. v. Forest Laboratories, Inc.*,
   2008 WL 850330, 2008 U.S. App. LEXIS 6838 (Fed. Cir. April 1, 2008).............13

*CAT Tech LLC v. TubeMaster, Inc.*,
   2008 WL 2188049, 2008 U.S. App. LEXIS 11377 (Fed. Cir. May 28, 2008).......13

*EMC Corp. v. Norand Corp.*,
   89 F.3d 807 (Fed. Cir. 1996)...................................................................................15

*Indium Corp. of America v. Semi-Alloys, Inc.*,
   781 F.2d 879 (Fed. Cir. 1985)...................................................................................8

*Jervis B. Webb Co. v. Southern System, Inc.*,
   742 F.2d 1388 (Fed. Cir. 1984).................................................................................8

*Joy Technologies v. Flakt, Inc.*,
   6 F.3d 770 (Fed. Cir. 1993) ................................................................................ 9-10

*MedImmune, Inc. v. Genentech, Inc.*,
   127 S. Ct. 764 (2007).................................................................................1, 11, 12

*Micron Technology, Inc. v. MOSAID Technologies*,
   518 F.3d 897 (Fed. Cir. 2008).................................................................................13

*SanDisk Corp. v. STMicroelectronics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007).........................................................................12, 13

*Sony Electrics v. Guardian Media Technologies*,
   497 F.3d 1271 (Fed. Cir. 2007).........................................................................12, 13

*Telectronics Pacing System, Inc. v. Ventritex, Inc.*,
   982 F.2d 1520 (Fed. Cir. 1992)............................................................................8, 11

*Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*,
   482 F.3d 1330 (Fed. Cir. 2007)........................................................................ 11-12

*Viz Media LLC v. Spector*,
   2007 WL 1068203, 2007 U.S. Dist. LEXIS 29442 (N.D. Cal. April 10, 2007).........8

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1)......................................................................................................1, 8

Local Rule 7-5....................................................................................................................14

## I.   INTRODUCTION

The entire premise of Plaintiffs' response to Syngenta's motion to dismiss is a misapplication of the law.  Plaintiffs improperly assume that Syngenta bears the burden on the issue of jurisdiction, when in fact, Plaintiffs bear the burden of proving jurisdiction at the time of the complaint to survive a motion to dismiss.  Plaintiffs also erroneously assert that the Court must assume the truthfulness of Plaintiffs' allegations for purposes of Fed. R. Civ. P. 12(b)(1).

On the merits, Plaintiffs essentially ask this Court to find jurisdiction in circumstances where Plaintiffs have unilaterally sought to generate an alleged controversy to establish jurisdiction to challenge Syngenta's U.S. Patent No. 7,105,469 ("the '469 patent").  This is highlighted by the fact that Plaintiffs attempted to manufacture jurisdiction by reliance on a hypothetical question posed by Plaintiff Sumitomo that put Syngenta in the position of either having to abandon the prospect of ever enforcing its patent no matter the circumstances or keeping that option open.  Other courts have rejected such a basis for declaratory judgment ("DJ") jurisdiction, and even after *MedImmune*, courts have only found subject matter jurisdiction where the patent owner has at least charged the plaintiff with infringement, which is not the case here.  If Sumitomo can unilaterally create subject matter jurisdiction in this manner, there would be no standard at all for jurisdiction, surely not the law under *MedImmune*.  Applying the correct standard, there is no current case or controversy here.

Plaintiffs' response only highlights the speculative nature of the alleged controversy.  Rather than establishing that Plaintiffs are poised to enter the clothianidin market for the treatment of transgenic plants and seeds, Plaintiffs' responsive papers show exactly the opposite:  that Plaintiffs are in fact not prepared to enter that market.  There is no evidence that they even have a finished product or any customers for their alleged product.  Further, Plaintiffs do not dispute the main points of Syngenta's motion.  Plaintiffs do not dispute, for example, that they approached Syngenta (not vice versa) to initiate discussions regarding a possible license under the '469 patent; that Syngenta has consistently stated its willingness to grant a license to Plaintiffs upon receipt of consent from co-exclusive licensee Bayer CropScience ("Bayer"); and that Syngenta has never accused Plaintiffs of infringement of the '469 patent.

For all these reasons as further developed below, Syngenta respectfully requests that the Court dismiss Plaintiffs' DJ complaint for lack of subject matter jurisdiction. Alternatively, the Court should exercise its discretion under the Declaratory Judgment Act and decline to hear this action.

## II.  STATEMENT OF FACTS

In their response, Plaintiffs seek to carry their burden of establishing subject matter jurisdiction through a declaration from Valent employee Motoharu Moriya. Apart from the fact that Mr. Moriya's declaration is fatally vague and rife with unreliable hearsay (*see, e.g.*, Moriya Decl. (D.I. 73) ¶¶ 15-18, 20), several key assertions in his declaration are factually inaccurate for the reasons set forth in the accompanying Declaration of Robert Durand. Mr. Durand is the Head of Third-Party Relations, Global Marketing, for Syngenta Crop Protection AG, and he personally participated in the license discussions described by Mr. Moriya in his declaration. (Durand Decl. ¶¶ 1, 3.)

Beginning in the fall of 2006, Sumitomo approached Syngenta to request a license under the '469 patent, which relates to the use of the insecticide clothianidin on transgenic crops. (Durand Decl. ¶ 4.) Syngenta had never raised any issue with Sumitomo concerning the '469 patent before Sumitomo approached Syngenta and initiated license discussions. (*Id.*) Nor did Mr. Durand, at that time or since, discuss with Sumitomo or accuse Sumitomo of any infringement of the patent or discuss with Sumitomo the validity of the patent. (*Id.*)

Syngenta informed Sumitomo that it was willing to grant Sumitomo a license under the '469 patent and at no time (whenever Sumitomo brought up the patent) did Syngenta state that it was unwilling to do so.[1] (Durand Decl. ¶ 5.) Syngenta explained, however, that it already had granted a co-exclusive license to Bayer under the '469 patent and, therefore, Bayer's consent would be required before Syngenta could grant a license to Sumitomo under the '469 patent. (*Id.*) During several subsequent meetings between the parties and in related correspondence, Sumitomo

---

[1] Plaintiffs assert that Syngenta did not present evidence of its willingness to grant a license in its motion "although it was obligated to do so." (D.I. 72 at 6 n.3.) While this is an improper attempt by Plaintiffs to shift the burden onto Syngenta, Syngenta identified correspondence from Sumitomo that shows Syngenta's willingness to grant a license. (*See* D.I. 42 at 4.)

repeatedly acknowledged that consent from Bayer was required before Syngenta could grant Sumitomo a license under the '469 patent. (*Id.*) Prior to bringing this lawsuit, Sumitomo never questioned the existence of a co-exclusive license agreement between Syngenta and Bayer involving the '469 patent. (*Id.*) As confirmed by Mr. Durand, the license agreement (entitled "Patent License") exists and was executed on April 5, 2006, by Syngenta Crop Protection AG, Syngenta Crop Protection, Inc., and Bayer CropScience AG. (Durand Decl. ¶ 6.) The license is co-exclusive and does not permit Syngenta to grant further licenses under the '469 patent to third parties without Bayer's consent, as Mr. Durand advised Sumitomo some time ago. (*Id.*)

On April 2, 2007, Syngenta, at Sumitomo's request, contacted Bayer to inquire whether Bayer would consent to Syngenta granting a license to Sumitomo under the '469 patent. (Durand Decl. ¶ 7; Durand Ex. 1.) On April 23, 2007, Sumitomo informed Syngenta that it was "confident that based on [Sumitomo's] relationship with Bayer with respect to Clothianidin that such confirmation [of consent] will be forthcoming . . . ." (Durand Decl. ¶ 7; Durand Ex. 2.)

The Moriya declaration asserts that Sumitomo field tested clothianidin on certain genetically engineered crops from 2005-08;[2] that it spent "several million dollars" on unspecified clothianidin field testing; that it filed trademark applications relating to its proposed clothianidin products; that it contracted with Helena Industries, Inc. "to formulate" various unidentified clothianidin products; and that it "met with more than ten" unidentified "prospective U.S. customers." (Moriya Decl. ¶ 11.) Mr. Durand was unaware of any of those alleged facts before Sumitomo initiated this litigation. (Durand Decl. ¶ 9.) With respect to Sumitomo's unidentified "prospective" customers, Mr. Moriya does not state that even one of those unidentified "prospective" customers has actually agreed to purchase Sumitomo's clothianidin products for use by growers on transgenic crops. (*Id.*) Currently, Bayer sells clothianidin insecticide products; Syngenta does not. (*Id.*) During the several meetings Mr. Durand attended with Sumitomo representatives, Sumitomo never identified any

---

[2] Although Mr. Moriya states that Plaintiffs field tested clothianidin on transgenic cotton (Moriya Decl. ¶ 11), the EPA registration submitted by Plaintiffs does not include cotton as a labeled crop. (Puknys Decl. Ex. A at 9-10.) Similarly, although Mr. Moriya claims that Plaintiffs have tested clothianidin on transgenic soybeans (Moriya Decl. ¶ 11), the EPA registration does not include soybeans as a labeled crop. (Puknys Decl. Ex. A at 9-10.)

1  customers who had agreed to switch from Bayer's established and successful clothianidin products
2  to Sumitomo's proposed clothianidin products (which apparently are still being formulated).  (*Id.*)
3  Sumitomo also never informed Syngenta of the fact, now alleged by Mr. Moriya, that Sumitomo
4  purportedly "lost" a prospective customer due to that customer's uncertainty about Sumitomo's
5  freedom to operate in view of the '469 patent.  (*Id.*)

6        The Moriya declaration asserts that Sumitomo "never received a response" to the license
7  terms proposed in its April 23, 2007, letter to Syngenta.  (Moriya Decl. ¶ 19.)  The April 23, 2007,
8  letter referred generally to aspects of a possible license, but did not include specific terms as to
9  consideration for the license.  (Durand Decl. ¶ 10.)  Mr. Moriya is also incorrect in asserting that
10  Syngenta did not respond.  (*Id.*)  On May 7, 2007, Jonathan Sullivan of Syngenta sent an email to
11  Nobuyuki Shinkai of Sumitomo indicating that Mr. Durand would respond orally to Sumitomo's
12  April 23rd proposal and provide an update on discussions with Bayer at the parties' next meeting
13  scheduled for May 22, 2007 in Japan.  (*Id.*; Durand Ex. 3.)  Both Mr. Moriya and Mr. Durand were
14  copied on Mr. Sullivan's email.  (*Id.*)

15        The Moriya declaration omits any mention of the parties' May 22, 2007, meeting and also
16  fails to acknowledge Sumitomo's follow-up correspondence dated May 30, 2007, which stated:
17  "Syngenta confirmed that it is willing to grant a license to Sumitomo under the '469 Patent on
18  mutually acceptable terms and conditions . . . .  Both parties agreed there is a need for Syngenta to
19  obtain Bayer's consent before Syngenta granting the license to Sumitomo."  (Durand Decl. ¶ 11;
20  Durand Ex. 4.)

21        Mr. Moriya's declaration also is incorrect in its statement, in paragraph 21, that "Syngenta
22  expressly threatened a patent infringement lawsuit against SCC on June 12, 2007."  (Durand Decl.
23  ¶ 12.)  Mr. Durand does not recall the precise words of the exchange that Mr. Moriya purports to
24  recount, but he does recall that in the context of the license discussions between the parties, Mr.
25  Moriya posed a hypothetical question to the effect that if Sumitomo infringed Syngenta's patent,
26  would Syngenta enforce its patent, and Mr. Durand responded that Sumitomo should expect
27  Syngenta to enforce its patents.  (*Id.*)  But Mr. Durand had no knowledge at that time of any actual
28  or imminent infringement by Sumitomo (or anyone else) of the '469 patent, nor did Mr. Moriya state

1  that Sumitomo had actually infringed the patent. (*Id.*) While Mr. Durand was not in a position to
2  preclude any possibility of future enforcement of the '469 patent by Syngenta against Sumitomo,
3  Mr. Moriya could not fairly come away from that brief exchange, prompted by Sumitomo and in an
4  overall context in which Sumitomo was seeking a license and Syngenta was indicating its
5  willingness to grant one, with a sincere belief that Sumitomo was being threatened with an
6  infringement lawsuit. (*Id.*) The parties' correspondence around the time of that meeting makes no
7  reference to any threat of suit, but refers on the contrary to Syngenta's willingness to license the
8  patent, Sumitomo's understanding that it needed Bayer's consent, and Sumitomo's progress in
9  seeking Bayer's consent. (*Id.*) If, notwithstanding, Mr. Moriya honestly believed that Sumitomo
10 was threatened with an infringement suit by a remark Mr. Durand made on June 12, 2007, he
11 misunderstood and is mistaken. (*Id.*)

12        Any decision by Syngenta to bring a patent infringement action in the future against
13 Sumitomo would have to be made by the company's upper management. (Durand Decl. ¶ 13.) To
14 Mr. Durand's knowledge, at the time Sumitomo filed its complaint in this Court, Syngenta's position
15 remained that it was willing to license Sumitomo under the '469 patent upon consent by Bayer, and
16 that was the position Mr. Durand consistently took with Sumitomo during the parties' discussions.
17 (*Id.*) It is Mr. Durand's understanding that Syngenta's position is the same today, and that Syngenta
18 remains willing to license Sumitomo. (*Id.*)

19        Paragraph 23 of the Moriya declaration quotes a single sentence from Mr. Durand's July 31,
20 2007, correspondence out of context, and mischaracterizes it as a "threat of a patent infringement
21 lawsuit." (Durand Decl. ¶ 14.) Mr. Durand's letter actually stated, in relevant part: "We noted that
22 Sumitomo (through its affiliate Valent) will enter the foliar market with clothianidin in September
23 2007. Syngenta is confident that clothianidin for foliar applications will not be used on/sold for use
24 on transgenic crops." (*Id.*; Durand Ex. 5.) The letter was not a "threat" but a statement of fact that
25 Syngenta expected that Plaintiffs' entry into the clothianidin market in September 2007 would
26 involve sales of clothianidin for foliar (leaf) applications on non-transgenic crops. (*Id.*) To Mr.
27 Durand's knowledge, that is exactly what happened: As reflected in a Valent press release dated
28 May 8, 2008, Valent initially began marketing clothianidin under the tradename Clutch® for use on

1  pears and apples (both non-transgenic fruit crops), and later began selling clothianidin for use on
2  grapes (another non-transgenic crop). (*Id.*; Durand Ex. 6.) Thus, there are significant non-infringing
3  uses for clothianidin on non-transgenic crops and the impression Plaintiffs are seeking to create that
4  Syngenta is trying to keep them out of the clothianidin market entirely is misleading.

5        The Moriya declaration refers to an August 3, 2007, meeting between Sumitomo and Bayer.
6  (Moriya Decl. ¶ 24.) Mr. Moriya states that "[d]uring the meeting SCC understood that the message
7  from Bayer was that Bayer did not want SCC to enter the seed treatment business." (*Id.*) Mr.
8  Moriya's negative assessment of that meeting is directly contradicted by an email that Mr. Shinkai of
9  Sumitomo sent to Mr. Durand (and copied to Mr. Moriya) on August 3, 2007—the same day the
10 meeting in question occurred. (Durand Decl. ¶ 15; Durand Ex. 7.) In that email, Mr. Shinkai
11 reported: "Today [August 3, 2007], I had a discussion with Bayer in Monheim. The progress is
12 slow but I believe that it is making progress. The meeting becomes more serious . . . . We have
13 started the discussion for the conditions of obtaining Bayer's consent to proceed with the 469
14 license." (*Id.*) Mr. Moriya's assertion that Sumitomo concluded from the August 3rd meeting that
15 Bayer "did not want SCC to enter the seed treatment business" is simply not credible in view of
16 Sumitomo's contemporaneous report to Syngenta of "progress" and "more serious" discussions with
17 Bayer on the subject of a license under the '469 patent. (*Id.*)

18       The Moriya declaration further asserts that, at an August 11, 2007, meeting between
19 Syngenta and Sumitomo, "Syngenta told SCC that it did not want to see any new entrant in the U.S.
20 seed treatment business." (Moriya Decl. ¶ 25.) That assertion is incorrect, as Mr. Durand never
21 made any such statement, and he was the only Syngenta representative present at that meeting.
22 (Durand Decl. ¶ 16.) Sumitomo's follow-up email correspondence to Mr. Durand dated August 22,
23 2007, did not refer to any such alleged statement, but instead began, "First of all, we thank you for
24 taking your time to meet [with] us on August 11th immediately after your arrival to Tokyo" and then
25 indicated that Sumitomo's "first priority" with regard to the '469 patent was "to still settle on a
26 business manner consistent with our existing good business relationships . . . ." (*Id.*; Durand Ex. 8.)
27 Mr. Moriya does not explain why, if Mr. Durand allegedly told Sumitomo that Syngenta did not
28

want any new entrants in the U.S. seed treatment business, Sumitomo continued to negotiate for a license under the '469 patent. (*Id.*)

Finally, with respect to Sumitomo's current assertion that the '469 patent is invalid, Mr. Durand does not recall Sumitomo ever asserting during any of the parties' several meetings or in any written correspondence that the '469 patent is invalid. (Durand Decl. ¶ 18.)

## III.  STATEMENT OF THE ISSUE TO BE DECIDED

Whether Plaintiffs have met their burden of establishing a justiciable case or controversy sufficient to confer declaratory judgment jurisdiction on this Court, where Plaintiffs approached Syngenta to request a license under the '469 patent, Syngenta responded that it was willing to grant a license upon consent by co-exclusive licensee Bayer, Syngenta never accused Plaintiffs of infringing the patent, and Plaintiffs have not even alleged that they have any actual customers or finished clothianidin products ready for sale and use on transgenic crops.

## IV.  REPLY

### A.  Plaintiffs' Response Is Premised on Incorrect Legal Standards

#### 1.  Plaintiffs Fail to Acknowledge That They Have the Burden to Prove Jurisdiction

As explained by the Federal Circuit, ***the declaratory judgment plaintiff***, not the patent holder defendant, maintains the burden "to establish that [subject matter] jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, LTD. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). Plaintiffs' response, however, fails to mention or otherwise acknowledge that Plaintiffs have the burden to establish DJ jurisdiction. Instead, improperly seeking to shift the burden onto Syngenta to prove the absence of jurisdiction, Plaintiffs repeatedly assert that Syngenta has "offered virtually no relevant evidence" to support its motion. (*See* D.I. 72 at 17, 1, 6 n.3, 7-8, 16.) Plaintiffs ignore the contemporaneous evidence of communications between the parties on which Syngenta relies and which contradict key positions taken by Mr. Moriya in his declaration and by Plaintiffs. But in any event, the Court should disregard Plaintiffs' legally flawed arguments, which are contrary to the basic principle that the DJ plaintiff has the burden to prove jurisdiction. *See, e.g., Benitec*, 495 F.3d at 1344.

### 2. The Allegations of the Complaint Are Not "Taken as True" in Assessing Jurisdiction

In addition, Plaintiffs incorrectly assert that all the material allegations in the complaint must be taken as true and construed in the light most favorable to them. (D.I. 72 at 8.) While this may be true for the Rule 12(b)(6) aspect of Syngenta's motion, it is not true for Syngenta's motion based on Rule 12(b)(1). In a non-facial challenge to subject matter jurisdiction (as here), no presumptive truthfulness attaches to the allegations contained in the complaint, *see, e.g., Viz Media LLC v. Spector*, 2007 WL 1068203, at *2, 2007 U.S. Dist. LEXIS 29442, at *4-5 (N.D. Cal. April 10, 2007), and the moving party may submit affidavits or any other evidence to challenge the existence of an actual controversy. *See Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 882, 884 (Fed. Cir. 1985). Further, Plaintiffs' suggestion that their complaint meets the "short and plain statement" pleading requirement (D.I. 72 at 8) overlooks the fact that in considering DJ jurisdiction, the Court must determine whether a justiciable controversy actually exists, not simply whether Plaintiffs allege a controversy. *See Indium*, 781 F.2d at 884 (explaining that the district court may consider extrinsic evidence to determine whether an "actual controversy" exists); *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984) (plaintiff carries the burden of proving the existence of facts underlying its allegations of the existence of an actual controversy).

As explained below, under the correct legal standards, Plaintiffs have failed to meet their burden to establish DJ jurisdiction in this case.

### B. Plaintiffs Have Failed to Establish That They Are Actually Prepared to Enter the Market

As a threshold requirement, Plaintiffs must prove that they have engaged in sufficient preparatory activities to establish a substantial and immediate case or controversy warranting DJ jurisdiction. *See Benitec*, 495 F.3d at 1346 ("The fact that Nucleonics may [infringe] in a few years does not provide the immediacy and reality required for a declaratory judgment."); *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1525-27 (Fed. Cir. 1992) (finding no DJ jurisdiction when at the commencement of the suit the medical device at issue had not yet obtained regulatory approval). Plaintiffs' response, however, is fatally deficient in this respect. Rather than establishing that Plaintiffs are poised to immediately enter the clothianidin market for the treatment

of transgenic plants and seeds, the only evidence submitted by Plaintiffs—the Moriya declaration—shows exactly the opposite: that Plaintiffs are in fact not prepared to enter that market.

### 1.     Plaintiffs Have No Customers

First, there is no evidence before the Court that Plaintiffs have even a single customer ready, willing, and able to purchase Plaintiffs' purported clothianidin products for use on transgenic crops. To the contrary, the Moriya declaration only states as follows:

> SCC has met with more than ten prospective U.S. customers for its clothianidin products to offer an alternative source of supply, as opposed to Bayer's clothianidin products. SCC has already lost at least one significant prospective customer in the U.S., after having negotiated the key commercial terms, because the customer was uncertain about SCC's freedom to operate in view of U.S. Patent No. 7,105,469 ("the '469 patent"), which I understand is owned by Syngenta and is the patent at issue in this litigation.

(Moriya Decl. ¶ 11(j).)

The Moriya declaration does *not* allege that any of those ten unidentified "prospective" customers have actually agreed to switch from Bayer's established and successful clothianidin products to Plaintiffs' proposed products. The only possible inference from Mr. Moriya's silence is that Plaintiffs' efforts to persuade those unnamed entities (which presumably include seed companies) to enter into contracts to purchase Plaintiffs' proposed clothianidin products have failed. Because Syngenta has had no jurisdictional discovery, it is unclear why Plaintiffs have been unsuccessful: Plaintiffs' proposed products may be technically deficient (e.g., inferior to Bayer's products), Bayer's existing customer's may be loyal to Bayer, Plaintiffs' prices may be too high, or there may be other reasons for Plaintiffs' lack of success in attracting customers.

Importantly, however, without any customers to purchase Plaintiffs' products, there will be no direct infringement of the '469 patent, because the patent claims are directed to a method, not a product, and that method would only be carried out by Plaintiffs' customers (or their customer's customers such as growers). (*See* D.I. 1, Ex. A at col. 92, claims 1-8.) Further, in the absence of direct infringement by those customers, there could be no indirect infringement (inducement or contributory infringement) by Plaintiffs as a matter of law. *See, e.g., ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) ("Hypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement."); *Joy Techs.,*

*Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement."). Thus, this case as it presently stands lacks any immediate or substantial controversy over infringement of the '469 patent.

Apparently recognizing this serious jurisdictional problem, Plaintiffs assert that "Syngenta may accuse Plaintiffs' past and ongoing field testing of infringing the '469 patent." (D.I. 72 at 3 n. 2). Notably, Plaintiffs do not, and cannot, allege that Syngenta has ever actually accused Plaintiffs of infringement through their field tests or otherwise. Moreover, Plaintiffs' suggestion that Syngenta would pursue a patent infringement claim against Plaintiffs based on the fact that Plaintiffs' field tests technically may have infringed the '469 patent is entirely speculative. This is particularly true considering the high costs and other burdens of patent litigation and the fact that only nominal damages may be available to Syngenta (and perhaps no injunctive relief) if the only infringement at issue in this case is Plaintiffs' "technical" act of infringement though small-scale field tests.

### 2. Plaintiffs Have No Finished Products

Second, Plaintiffs have submitted no evidence that they have any finished clothianidin products that are ready for sale and use on transgenic crops. The Moriya declaration certainly does not represent that Plaintiffs have completed the development of *any* clothianidin products for use with transgenic crops. To the contrary, Mr. Moriya concedes that Plaintiffs have "contracted with Helena Industries, Inc. in Cordele, Georgia *to formulate* various clothianidin finished products for treatment of seeds, including seeds of genetically engineered plants." (Moriya Decl. ¶ 11(i) (emphasis added).) Thus, based on this contract, it appears that Plaintiffs either have failed in their own efforts to develop (formulate) competitive products or they lack the technical capabilities to do so. The Moriya declaration does not disclose when the contract with Helena Industries was entered into or what stage of product development Plaintiffs have reached. It is therefore entirely possible that those products remain in the earliest stages of development and that Plaintiffs may or may not eventually have a product to sell—depending on whether Helena Industries is able to develop a formulation that works on transgenic crops. DJ jurisdiction, however, should not be based on apparently undeveloped products that may never even reach the market.

### 3. Plaintiffs Have Contractual Restrictions on Their Ability to Enter the Market

Third, Plaintiffs admit that their ability to enter the market in 2008 is contractually restricted by "a few exceptions" (not disclosed in the response) in their agreement with Bayer. Those unspecified exceptions give Bayer continued exclusive rights to sell clothianidin in the United States for the treatment of transgenic seeds beyond 2008. (D.I. 72 at 2, n. 1; *see also* D.I. 1 at ¶ 23.) Thus, as admitted in the Moriya declaration, "Bayer will enjoy exclusive rights to clothianidin sales for the treatment of seeds in the United States until November 2008, except for certain plants where the date was extended for one year." (Moriya Decl. ¶ 9.) Plaintiffs have not produced a copy of their agreement with Bayer and have failed to reveal what "exceptions" or "certain plants" are subject to continued Bayer exclusivity, suggesting the exceptions may be significant. It is possible, for example, that the undisclosed exceptions may actually give Bayer continued exclusive rights with respect to major transgenic crops. If that is the case, there would be even less basis for this Court to assert DJ jurisdiction.

In short, there is a substantial question as to whether the Plaintiffs are actually in a position to enter the clothianidin market for transgenic crops. Thus, for this reason alone, Plaintiffs have not met their burden of establishing the immediacy and reality requirements for DJ jurisdiction. *See Benitec*, 495 F.3d at 1346; *Telectronics*, 982 F.2d at 1525-27.

### C. Plaintiffs Have Failed to Meet Their Burden of Establishing an Actual and Immediate Injury Caused by Syngenta

Even if Plaintiffs could establish that growers or others are using clothianidin in accordance with the claims of the '469 patent, it does not follow that there is DJ jurisdiction. They have to separately show that there is a live case or controversy within the meaning of the *MedImmune* and post-*MedImmune* precedent. They have not done so here.

#### 1. Plaintiffs Cannot Unilaterally Create a Justiciable Case or Controversy

In analyzing DJ jurisdiction, the activities and statements of the patentee are key to determining whether a controversy exists. As explained by the Federal Circuit, under the *MedImmune* standard the plaintiff must establish "an actual or imminent injury ***caused by the defendant***." *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir.

1  2007) (emphasis added).  Thus, unilateral actions by a prospective licensee to generate a
2  controversy, without an actual or imminent injury caused by the patentee, are not sufficient for
3  jurisdiction.  *See id.*  However, that is exactly what Plaintiffs are trying to do:  create a justiciable
4  controversy between the parties, where none exists, in order to maintain this suit.

5  Tellingly, Plaintiffs do not dispute key aspects of Syngenta's motion.  Plaintiffs, for example,
6  do not dispute that they approached Syngenta (not vice versa) to initiate discussions regarding a
7  possible license under the '469 patent; that Syngenta has consistently stated its willingness to license
8  Plaintiffs upon receipt of consent from co-exclusive licensee Bayer; and that Syngenta has never
9  accused Plaintiffs of infringing the '469 patent.  Further, the Moriya declaration—the sole alleged
10 evidentiary basis for jurisdiction—is fatally vague and replete with factual inaccuracies as detailed in
11 § II above and in the accompanying Declaration of Robert Durand.  Plaintiffs have therefore failed
12 to carry their burden of establishing an immediate and substantial case or controversy.  *Benitec*, 495
13 F.3d at 1344 (plaintiff maintains the burden "to establish that such jurisdiction existed at the time the
14 claim for declaratory relief was filed").  Further, Plaintiffs' litigation-driven allegations set forth in
15 their response and Moriya declaration lack credibility because they are flatly inconsistent with the
16 contemporaneous correspondence exchanged between the parties as explained in § II above.

17 **2.    The Cases Cited By Plaintiffs Are Distinguishable**

18 Plaintiffs cite several cases, none of which supports jurisdiction.  In *MedImmune, Inc. v.*
19 *Genentech, Inc.*, 127 S. Ct. 764 (2007), for example, the Supreme Court held that a justiciable
20 dispute was present where there was an ***undisputed threat*** by the patentee to enjoin the licensee's
21 sales of a specific drug if the licensee failed to make its royalty payments on an existing license.
22 *MedImmune*, 127 S. Ct. at 772 (explaining that the licensee "alleges (without contradiction) a threat
23 by respondents to enjoin sales if royalties are not forthcoming").  In fact, the patentee sent the
24 licensee a letter expressing its belief that the drug at issue was "covered" by the licensed patent and
25 the patentee expected to receive royalty payments.  *Id.* at 768.  Here, Syngenta never accused
26 Plaintiffs of infringement and never demanded royalties from them.

27 Similarly, as explained in Syngenta's motion to dismiss (D.I. 42 at 7-8), the Federal Circuit's
28 decisions in *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007), *Sony*

*Electronics, Inc. v. Guardian Media Technologies*, 497 F.3d 1271 (Fed. Cir. 2007), and *Micron Technology, Inc. v. MOSAID Technologies, Inc.*, 518 F.3d 897 (Fed. Cir. 2008), are inapposite. In those cases, the court found jurisdiction where the patentee exhibited a preparedness and willingness to enforce its patent rights. For example:

- the patentees provided the alleged infringers with detailed infringement analyses. *SanDisk*, 480 F.3d at 1375, 1382; *Sony*, 497 F.3d at 1285;

- the patentee asserted that it was entitled to specific amounts in royalties based on allegations of past patent infringement. *Sony*, 497 F.3d at 1285;

- the patentee sent warning letters stating that the DJ plaintiff should accept a license under the patent. *Micron*, 518 F.3d at 899, 901;

- the patentee sued "each of the other leading DRAM manufacturers" and announced its intention to continue to litigate as necessary to get suspected infringers to take licenses. *Id.* at 899, 901.

Further, in *CAT Tech LLC v. TubeMaster, Inc.*, 2008 WL 2188049, at *4, 2008 U.S. App. LEXIS 11377, at **10-11 (Fed. Cir. May 28, 2008), also cited by Plaintiffs, the court found jurisdiction to maintain the accused infringer's DJ counterclaim of non-infringement where the patentee had ***already*** initiated a patent infringement suit against the accused infringer. In contrast, Syngenta has not initiated any action against Plaintiffs for infringement. In fact, there is no credible evidence that Syngenta intends to initiate any action against Plaintiffs given that Syngenta has agreed to license them if Bayer consents.

Finally, in *Caraco Pharm. Labs., Inc. v. Forest Labs., Inc.*, 2008 WL 850330, at **8-13, 2008 U.S. App. LEXIS 6838, at **30-48 (Fed. Cir. April 1, 2008), the court found a case or controversy present (even though the patentee had granted a convent not to sue) based on the peculiar nature of the Hatch-Waxman Act at issue. Specifically, despite the covenant not to sue, the Orange Book listing requirements of the Hatch-Waxman Act (triggered by the patentee's own actions) indefinitely delayed the DJ plaintiff's entry onto the market absent a judgment that the patent at issue was invalid or not infringed. *Id.* Thus, *Caraco* was addressing "a different set of circumstances than those which underlie an ordinary infringement action." 2008 WL 850330, at *10, 2008 U.S. App. LEXIS 6838, at *30. Here, the Hatch-Waxman Act is not at issue and thus there is no statute preventing Plaintiffs from entering the market.

Plaintiffs notably cite no case where jurisdiction was unilaterally generated by a DJ plaintiff. Plaintiffs' legally unsupported position, if accepted, would essentially remove the "actual controversy" requirement from DJ jurisdiction.

### D. Sumitomo's Local Rule 7-5 Argument Lacks Merit

Citing Local Rule 7-5, Plaintiffs argue that Syngenta's motion should be stricken because Syngenta did not furnish a copy of the Bayer/Syngenta agreement, which provides that Syngenta must have Bayer's consent to grant third parties a license. (D.I. 72 at 7.) Plaintiffs argument lacks merit. Plaintiffs have long known about the co-exclusive license agreement and even ***assert as fact in their complaint*** that the agreement "requires Bayer's consent for any additional license." (D.I. 1 at ¶ 13.) Further, Plaintiffs (who have the burden of proof) cannot credibly argue that a copy of the agreement must be attached to the motion to dismiss where they have failed to disclose the alleged Takeda/Bayer agreement referred to in their complaint and response. (*See* D.I. 72 at 2; D.I. 1 at ¶ 23.) Moreover, Syngenta is not relying on the Syngenta/Bayer agreement as its basis for the lack of case or controversy. The lack of controversy is based primarily on the absence of any action by Syngenta raising a justiciable dispute.

### E. Assuming an Actual Controversy Is Present, This Court Should Decline to Exercise Jurisdiction

It would be patently unfair to subject Syngenta to the substantial burdens and expense of defending this DJ action when it has never accused Plaintiffs of patent infringement. Further, as explained above, it is entirely speculative whether Plaintiffs are prepared to enter the market anytime soon. Although Plaintiffs claim to have met with "more than ten" unnamed "prospective customers" for their clothianidin products, they fail to identify any actual customer for their products. There is no evidence presented that any company involved in the clothianidin seed treatment business is prepared to purchase and use Plaintiffs' products (which apparently are still being formulated) in lieu of Bayer's established and successful clothianidin products currently on the market. Further, it unclear what significance the "exceptions" for "certain plants" in the Takeda/Bayer agreement will have on Plaintiffs' alleged "launch" (assuming there is even a product to launch). Additionally, the alleged controversy is entirely speculative given that Syngenta cannot know if and when Bayer

(Sumitomo's joint development partner with respect to clothianidin) will consent to a license. (*See* D.I. 42 at 3-4.)

Thus, even if the Court decides that jurisdiction is present, the completely speculative nature of this alleged controversy counsels against exercising jurisdiction on the grounds of preserving judicial resources. This case, where Plaintiffs have attempted to generate a controversy, is not the sort of "guerilla-like" scare tactic situation on the part of the patentee the Declaratory Judgment Act was designed to address. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814-15 (Fed. Cir. 1996). Accordingly, even assuming an actual controversy exists, this Court should still dismiss this action under its discretionary authority to decline adjudication of DJ actions.

## V.  CONCLUSION

For all the foregoing reasons, Syngenta respectfully requests that this Court grant its motion to dismiss.

DATED: June 19, 2008              FINNEGAN, HENDERSON, FARABOW,
                                  GARRETT & DUNNER, LLP


                                  By_____/ s /_____
                                     Erik R. Puknys
                                     Attorney for Defendant Syngenta Crop Protection, Inc.